999 So.2d 1184 (2008)
David W. BERNBERG, Individually and on Behalf of His Minor Child, Ariel Sarah Bernberg.
v.
Dr. Arthur STRAUSS.
No. 2008-CA-0488.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 2008.
*1185 David Bernberg, Henna Ghafoor, The Law Office of David W. Bernberg, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
Thomas C. Cowan, J. Michael Daly, Jr., Cowan & Lemmon, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD).
MAX N. TOBIAS, JR., Judge.
The plaintiff, David Bernberg ("Bernberg"), individually, and on behalf of his minor daughter, Ariel Sarah Bernberg, appeals an adverse judgment rendered in favor of the defendant, Dr. Arthur Strauss ("Dr. Strauss"), dismissing Bernberg's suit against him, with prejudice, on exceptions of no cause and/or right of action. For the reasons that following, we affirm.

FACTS AND PROCEDURAL HISTORY
On 3 November 2005, Bernberg, individually, and on behalf of his minor daughter, Ariel, sued for damages alleging the "improper care, diagnosis, and treatment" of his ex-wife, Doreen Bernberg ("Doreen"), by the defendant, Dr. Arthur Strauss, a qualified healthcare provider under La. R.S. 40:1299.41. Bernberg averred that, due to Dr. Strauss' neglect and malpractice, Ariel sustained both physical and emotional damages.
Dr. Strauss filed an exception of prematurity to Bernberg's petition asserting that Bernberg's claim was for medical malpractice and, as such, was required to first be brought before a Medical Review Panel pursuant to La. R.S. 40:1299.41, et seq. In opposition, Bernberg argued that the damages claimed did not arise as a result of medical malpractice (i.e., the "improper care, misdiagnosis or mistreatment" of Doreen Bernberg), but rather, from Dr. Strauss' knowingly providing false testimony to the trial court in a child custody hearing. According to Bernberg, Dr. Strauss' false and unsupported expert testimony led the trial court presiding over the custody matter to issue a joint custody decree and to award domiciliary custody to his estranged wife, causing severe emotional distress to the minor child.[1]
Pursuant to La. C.C.P. art. 927 B,[2] the trial court, on its own motion, converted *1186 Dr. Strauss' exception of prematurity to an exception of no cause of action, which it granted, finding that Bernberg's petition stated no cause of action in medical malpractice or otherwise against Dr. Strauss. The judgment further rendered Dr. Strauss' exception of prematurity moot, and gave Bernberg fifteen days within which to amend his petition to state a cause of action, if he could.
Bernberg filed a "First Supplemental and Amending Petition" alleging the negligence of Dr. Strauss in failing "to provide informed and supported testimony" and/or misrepresenting "facts during a child custody hearing, which ultimately resulted in a decree of joint custody and domiciliary custody to plaintiff's estranged wife, who was a patient of Dr. Strauss' and who had been diagnosed with borderline personality disorder (BPD)." He alleged that Dr. Strauss "failed to advise the Court presiding over plaintiff's child custody hearing of the well-known risks of unpredictable and even dangerous behavioral changes associated with the BPD disorder with which Mrs. Bernberg had been diagnosed."
In response to Bernberg's, Dr. Strauss filed several exceptions, including an exception of no cause and/or right of action on the grounds that no privity of contract existed Bernberg (or the minor child) and Dr. Strauss and no doctor-patient relationship existed between the parties that might give rise to a cause and/or right of action.[3] The matter came for hearing on 1 February 2008, at which time the trial court granted Dr. Strauss' exception of no cause and/or right of action, and specifically rendered his exception of prescription as moot, thereby denying same.[4] A judgment and reasons therefor was signed on 3 March 2008. From the judgment, Bernberg timely appealed.

DISCUSSION
The narrow issue presented for our review is whether Bernberg, individually, and/or on behalf of his minor child, has a cause and/or right of action in negligence, or otherwise, against a physician who renders expert testimony on behalf of the opposing party in a child custody hearing. We find Bernberg does not have a cause of action against Dr. Strauss for the allegations alleged under any theory of law presented by this case.
Exceptions of no cause of action and no right of action are both peremptory exceptions, the function of which is "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence, [these] exception[s] tend to dismiss or defeat the action." La. C.C.P. art. 923. See also, Hornot v. Cardenas, 06-1341, pp. 12-13 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798.
In Badeaux v. Southwest Computer Bureau, Inc., 05-0612, 05-719, p. 6 (La.3/17/06), 929 So.2d 1211, 1216-1217, the Court discussed these two exceptions and stated that "one of the primary differences between the exception of no right of action and no cause of action lies in the *1187 fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant."[5] As a result, although in theory Bernberg may have a right of action because he has an interest in asserting a claim against Dr. Strauss feeling that Dr. Strauss' testimony adversely affects him and his child, he has no cause of action as discussed infra. Therefore, in light of our holding that no cause of action exists, the issue of a right of action is mooted and we pretermit any further discussion thereof.
This court, in Southern Tool & Supply, Inc. v. Beerman Precision, Inc., 03-0960 (La.App. 4 Cir. 11/26/03), 862 So.2d 271, discussed the standard of review for exceptions of no cause of action:
We review a trial court's decision on an exception of no cause of action de novo "because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition." City of New Orleans v. Board of Comm'rs of Orleans Levee Dist., 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In doing so, we are confined to the allegations of the petition. No evidence can be introduced to support or to controvert an exception of no cause of action. La. C.C.P. art. 931. Rather, we must accept as true the well pleaded factual allegations set forth in the petition. Based thereon, our job is to determine "whether, on the face of the petition, the plaintiff is legally entitled to the relief sought." Everything on Wheels Subaru v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993).
A defendant's peremptory exception of no cause of action is designed to test the legal sufficiency of the plaintiff's petition. It poses the question "whether the law affords a remedy on the facts alleged in the pleading." Id. Louisiana has a system of fact pleading, and "[t]he mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action." Montalvo v. Sondes, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131. As we recently noted, "[i]t is insufficient to state a cause of action where the petition simply states legal or factual conclusions without setting forth facts that support the conclusions." Bibbins v. City of New Orleans, 02-1510, p. 5 (La.App. 4 Cir. 5/21/03), 848 So.2d 686, 691, writ denied, 03-1082 (La.10/10/03), 855 So.2d 357.
The exceptor has the burden of proving that the petition fails to state a cause of action. This burden serves the public policy of affording the plaintiff his day in court to present his case. "When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence." Kuebler v. Martin, 578 So.2d 113, 114 (La.1991). "An exception of no cause of *1188 action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief." City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 10 (La.3/2/99), 739 So.2d 748, 749.
Id. at pp. 6-7, 862 So.2d at 677.
In appraising the sufficiency of the petition, the reviewing court should follow the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitled him to relief. Campbell v. Sottiurai, 02-2223, p. 2, (La.App. 4 Cir. 1/29/03), 839 So.2d 421, 422-423. The question, therefore, is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. Id. A petition should not be dismissed on an exception of no cause of action merely because the plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide relief under any possible theory. Id.[6]See also Hoskin v. Plaquemines Parish Government, 98-1825, pp. 10-11 (La.App. 4 Cir. 8/4/99), 743 So.2d 736, 742.
In the present case, Bernberg, through his amending petition, attempts to fashion a cause of action against Dr. Strauss under a general negligence theory in an effort to remove the claims he asserted in his original petition (i.e., Dr. Strauss' "improper care, diagnosis, and treatment" of Doreen) from the limitations afforded to Dr. Strauss by the Medical Malpractice Act ("MMA"), which specifically limits a plaintiff's procedural right to sue a qualified healthcare provider such as Dr. Strauss. Bernberg argues the MMA applies to healthcare providers solely within their doctor-patient relationship, and does not extend to acts of negligence occurring outside the scope of the healthcare provider's employment.
Specifically, Bernberg contends Dr. Strauss' uninformative, unsupported and/or false expert testimony relative to his patient and her BPD condition, was heavily relied upon by the court presiding over the child custody hearing and that led to a joint custody decree and domiciliary custody being granted to Bernberg's estranged wife. According to Bernberg, Dr. Strauss testified, without supporting documentation, that in his medical opinion, Doreen's BPD disorder did not pose a threat to the child. Further, Bernberg argues Dr. Strauss failed to advise the court of the well-known risk of unpredictable and even dangerous behavioral changes associated with the BPD disorder, all of which Bernberg claims constitutes actionable negligence.
Taking all factual allegations of Bernberg's original and amending petitions to be true, we agree with the trial court and find that Bernberg has failed to state a cause of action against Dr. Strauss upon which relief can be granted. Moreover, it is beyond doubt that Bernberg cannot prove a set of facts in support of the claims he asserts that would entitle him or his minor daughter to relief against Dr. Strauss under any theory of law as Dr. Strauss, an adverse expert witness to Bernberg, is entitled to absolute witness immunity in this case.[7]
*1189 "Since the 1800s, [the Supreme Court] has recognized the rule that, at least in the context of defamation suits against adverse witnesses, immunity from a civil action attaches to a witness in judicial or quasi-judicial proceedings." Marrogi v. Howard, 01-1106, p. 8 (La.1/15/02), 805 So.2d 1118, 1124, citing Oakes v. Walther, 179 La. 365, 154 So. 26, 27 (1934). The Court explained the rationale for this rule:
[C]ommunications made in judicial or quasi-judicial proceedings carry an absolute privilege so that witnesses, bound by their oaths to tell the truth, may speak freely without fear of civil suits for damages.
Id. at p. 9, 805 So.2d at 1124, citing Knapper v. Connick, 96-0434, p. 3 (La. 10/15/96), 681 So.2d 944, 946. The general rule in Louisiana is that:
[T]here is absolute immunity from civil liability for testimony given by a non-party witness in a judicial proceeding, so long as that testimony is pertinent and material to the issue.
Id. at p. 11, 805 So.2d at 1126 (citations omitted).[8]See also, La.R.S. 14:50(2).[9]
The courts in Louisiana have also applied the absolute witness privilege to retaliation claims against adverse witnesses, including experts. See, e.g., American Lifecare, Inc. v. Wood, 02-1354, pp. 5-6 (La.App. 4 Cir. 8/28/02), 826 So.2d 646, 649-650 (expert witness, the functional equivalent of a court-appointed expert, was entitled to witness immunity for his appraisal submitted during an arbitration proceeding); Moity v. Busch, 368 So.2d 1134, 1136 (La.App. 3 Cir.1979)("As an accepted qualified expert witness [retained by an adverse party], [the defendant] was free to give his opinion whether others might disagree with his conclusions or not."); S.T.J. v. P.M., 556 So.2d 244 (La. App. 2 Cir.1990)(three psychologists appointed by the court during a custody dispute were entitled to absolute judicial immunity *1190 from any tort liability asserted in a later suit filed by the losing parent pursuant to La. C.C.P. art. 373.[10]); Todd v. Angelloz, 02-1400, p. 9 (La.App. 1 Cir. 3/28/03), 844 So.2d 316, 321 (psychologist, appointed to assist the trial court in making a custody determination by conducting individual evaluations of each parent, was extended judicial immunity in a later suit filed by the husband claiming negligence and malpractice for testimony the psychologist provided in the prior custody proceedings.).
In Marrogi, the Supreme Court specifically held that this immunity attaches to adverse witnesses, both non-volunteer witnesses and expert witnesses. Marrogi, 01-1106, at p. 14, 805 So.2d at 1127-1128.[11] As such, even assuming Bernberg was able to fashion an actionable cause of action against Dr. Strauss for his alleged negligent, false and/or unsupported expert testimony (which we find he cannot), as an expert witness adverse to Bernberg in the prior child custody proceeding, we find Marrogi controlling and hold that Dr. Strauss is entitled to absolute witness immunity in this case. Additionally, application of the policies and reasoning enunciated in S.T.J. and Todd further dictate that Dr. Strauss is entitled to absolute immunity from the claims asserted by Bernberg herein. The administration of justice and its objective to uncover the truth support the application of witness immunity. Courts must offer witnesses an environment free from apprehension and fear. Possible liability to the adverse party does not guarantee truth, and reliability may be adequately ensured by the witness' oath, the hazards of cross-examination, and the threat of a perjury prosecution. See Zuber, 02-1718, p. 6, 849 So.2d at 563.
It is undisputable that Dr. Strauss' expert testimony was offered in a judicial proceeding. His testimony was pertinent and material to the child custody determination. Marrogi, 01-1106, at p. 11, 805 So.2d at 1126. Therefore, Dr. Strauss, as an adverse witness to Bernberg, enjoys an absolute privilege protecting him from civil suit. Accordingly, the trial court's judgment in favor of Dr. Strauss, dismissing Bernberg's demands, was proper.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] According to Bernberg, prior to the custody hearing, he enjoyed sole custody of the child.
[2] La. C.C.P. art. 927 B provides that "... the failure to disclose a cause of action or a right of action or interest in the plaintiff to institute the suit, may be noticed by ... the trial court... of its own motion."
[3] Dr. Strauss also filed an exception of prescription to Bernberg's amending petition on the basis that the date of the hearing wherein he allegedly falsely testified, and from which the tortuous conduct allegedly occurred, was held more than one year prior to the filing of Bernberg's original petition on 3 November 2005.
[4] On appeal, Dr. Strauss argues that this court "should dismiss this matter as prescribed in addition to maintaining the trial court's ruling." However, he has not properly raised the issue on appeal. Specifically, in order for this court to address the prescription issue, Dr. Strauss would have had to either file (a) his own motion for appeal of the trial court's denial of his exception of prescription (La.C.C.P. art. 2121), or (b) an answer to the plaintiff's appeal (La.C.C.P. art. 2133). Because Dr. Strauss did neither, the issue of prescription is not before us.
[5] In Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885, the Court analyzed the merits of an exception of no right of action as follows:

An action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. La. C.C.P. art. 927(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to who the law grants the cause of action asserted in the suit. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (La. 1972).
Thus, the exception of no right of action assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Id. at 888.
[6] Campbell involved an unusual set of facts, and we question whether some of the holdings therein are valid law in view of the lack of a physician-patient relationship between the plaintiff's decedent and most of the physicians sued.
[7] Even without witness immunity, we find the plaintiff has no cause of action against Dr. Strauss. Bernberg concedes that there was no malpractice committed in this case. Further, no physician-patient or contractual relationship existed between Bernberg and Dr. Strauss, nor between the minor child and Dr. Strauss; the physician-patient and/or any contractual relationship existed solely between Dr. Strauss and Doreen. Consequently, Doreen would be the only person with a right and/or cause of action against Dr. Strauss for any alleged improper treatment or misdiagnosis. Any purported claims for intentional infliction of emotional distress against Dr. Strauss would likewise lie with Doreen. Similarly, as Doreen's retained expert witness, any potential claim arising out of the testimony Dr. Strauss provided during the custody proceedings would also lie with Doreen.

We note that during the custody hearing, the trial judge heard the expert opinion testimony of several psychiatrists, in addition to Dr. Strauss, prior to rendering a decision. A difference in judgment concerning the treatment of a patient and the patient's capabilities and whether or not the patient is qualified to have sole custody lies within the discretion of the trier of fact. Had Bernberg disagreed with the trial judge's custody determination, his proper remedy would be a motion for new trial or appeal.
[8] See Zuber v. Buie, 02-1718 (La.App. 1 Cir. 5/9/03), 849 So.2d 559, wherein the mother's defamation action against a volunteer adverse witness (a private investigator who prepared a surveillance report for the father in a child custody dispute), was dismissed on grounds of non-party witness immunity, finding that the surveillance report was offered into evidence in a judicial proceeding and was pertinent and material to the custody determination.
[9] La. R.S. 14:50 provides, in pertinent part:

"There shall be no prosecution for defamation in the following situations: * * *
"(2) Where there is a statement made by a witness in a judicial proceedings, or in any other legal proceeding where testimony may be required by law, and such statement is reasonably believed by the witness to be relevant to the matter in controversy...."
[10] La. C.C.P. art. 373 provides:

An expert appointed by a trial court to assist it in the adjudication of a case in which his special skill and knowledge may aid the court is an officer of the court from the time of his qualification until the rendition of final judgment in the case.
[11] However, the Court held that witness immunity did not bar a claim against a retained expert witness asserted by a party when the claim arises from the expert's allegedly deficient or negligent performance of his agreed upon duties to provide litigation performance services, such as formulating opinions and recommendations, and providing opinion testimony before or during trial. Id. at p. 25, 805 So.2d at 1133. The Court noted that the underlying rule permitting a witness to speak freely and without fear of exposure to vexatious litigation where a search for the truth is before the fact finder is not advanced by immunizing the incompetence of a party's retained expert witness simply because the expert witness provides professional services, including testimony, in relation to a judicial proceeding. Id.